UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| SUPERIOR EDGE, INC., | Civil No. 12-2672 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER AFFIRMING MAGISTRATE JUDGE ORDER DATED SEPTEMBER 11, 2014** |
| MONSANTO COMPANY and SITE-SPECIFIC TECHNOLOGY DEVELOPMENT GROUP, INC., | |
| Defendants. | |

Walter Joseph Gates, III, **WALTER J. GATES, III, P.A.**, First National Bank Minnesota Office Building, 510 Long Street, Suite 109, Mankato, MN 56001; and William G. Osborne, **WILLIAM G. OSBORNE, P.A.**, 1305 East Robinson Street, Orlando, FL 32801, for plaintiff.

Dean B. Thomson, Lucas T. Clayton, and Richard G. Jensen, **FABYANSKE WESTRA HART & THOMSON, PA**, 333 South Seventh Street, Suite 2600, Minneapolis, MN 55402; and James F. Bennett, Jennifer S. Kingston, and Robert F. Epperson, Jr., **DOWD BENNETT LLP**, 7733 Forsyth Boulevard, Suite 1410, St. Louis, MO 63105, for defendant Monsanto.

This discovery dispute arises out of Plaintiff Superior Edge, Inc.'s ("SEI") allegations that Defendants Monsanto Company and Site-Specific Technology Development Group, Inc. ("SST") misappropriated SEI's intellectual property to create Monsanto's FieldScripts software. On July 15, 2014, United States Magistrate Judge Franklin L. Noel granted SEI's motion to compel production of the FieldScripts source code. Monsanto objected on July 30, 2014, arguing that additional protections were

needed to protect its trade secrets. Monsanto also moved to reconsider on August 20, 2014, asking the Magistrate Judge to require that (1) the source code only be viewed on computers not connected to the Internet, (2) the source code be encrypted when not being analyzed, and (3) a third-party custodian secure the source code and monitor its access. The Magistrate Judge modified the order on September 11, 2014, granting Monsanto's request in part by restricting access to computers disconnected from the Internet and requiring encryption. However, the Magistrate Judge denied Monsanto's request for a third-party custodian. The parties have not objected to the order on Monsanto's motion to reconsider. Therefore, the only remaining issue for this Court is whether a third-party custodian should be required. Because Monsanto has not demonstrated that the current protective order is inadequate or that SEI's attorneys are likely to violate its terms, the Court overrules Monsanto's objection requesting a third-party custodian.

## BACKGROUND[1]

SEI commenced this litigation on October 19, 2012, following the termination of a Software Development and License agreement between the parties. (*See* Compl. ¶¶ 21, 64, Oct. 19, 2012, Docket No. 1.) Among other claims, SEI alleged that Monsanto and SST misappropriated SEI's intellectual property. (*Id.* ¶ 67; *see also* Second Am. Compl. ¶¶ 101-115, Dec. 13, 2013, Docket No. 102.)

---

[1] This Order only discusses facts relevant to Monsanto's objection. A more detailed recitation of the facts surrounding SEI's allegations and claims can be found in the Court's previous orders. *See Superior Edge, Inc. v. Monsanto Co.*, 964 F. Supp. 2d 1017, 1025-30 (D. Minn. 2013); *see also Superior Edge, Inc. v. Monsanto Co.,* Civ. No. 12-2672, 2013 WL 6405362, at *1-*3 (D. Minn. Dec. 6, 2013).

On September 16, 2013, the parties stipulated to a protective order to guard against disclosure of trade secrets. (*See* Stipulation for Protective Order, Sept. 25, 2013, Docket No. 69.)  The stipulation included the right to designate documents as "Confidential – Attorneys' Eyes Only." (*Id.* ¶ 5.) Documents with an "Attorneys' Eyes Only" ("AEO") designation may not be viewed by the opposing parties themselves. (*See id.* ¶¶ 4, 5.) Instead, they may only be viewed by the parties' attorneys, the Court, the Court's officers and reporters, authors of the document, and expert witnesses.[2] (*Id.*) The documents may not be disclosed to an outside "person who is known to be an employee or agent of, or consultant to, any competitor of the party whose designated documents are sought to be disclosed" unless the producing party is given a fourteen-day notice and does not object. (*See id.* ¶ 7.) The protective order provides that "[a]ny party may apply to the Court for a modification of the Protective Order, and nothing in the Protective Order shall be construed to prevent a party from seeking such further provisions enhancing or limiting confidentiality as may be appropriate." (*Id.* ¶ 14.)

SEI served Monsanto with a request for production on October 2, 2013. (Monsanto's Mem. in Opp'n to Pl.'s. Mot. to Compel ("Mem. in Opp'n to Pl.'s Mot. to Compel") at 3, June 11, 2014, Docket No. 152.) The request included "[a]ny and all

---

[2] Specifically, the "expert witness" provision refers to:

> outside independent persons (i.e., persons not currently or formerly employed by, consulting with, or otherwise associated with any party) who are retained by a party or its attorneys to furnish technical or expert services, or to provide assistance as mock jurors or focus group members or the like, and/or to give testimony in this action.

(*Id.* ¶ 4(g).)

forms of the . . . source code . . . for the program or programs that at any time have been used or are currently being used to produce 'Fieldscripts' materials." (Monsanto's Objection to Magistrate Judge Order Requiring Production of Proprietary Source Code ("Objection"), Ex. 2 at 9, July 30, 2014, Docket No. 163-3.) Monsanto agreed to "produce documents . . . relating to the . . . source code" but resisted disclosing the source code itself. (*See id.*) When SEI moved to compel production of the source code, Monsanto argued that the information was too sensitive to be sufficiently protected by an AEO designation and that its discovery was unnecessary. (Mem. in Opp'n to Pl.'s Mot. to Compel at 16 n.8.) The Magistrate Judge ordered Monsanto to produce the source code, expressing "confiden[ce] that the current Protective Order already in place is sufficient to ensure the confidentiality of this highly sensitive information and that the parties will respect any 'Attorneys' Eyes Only' designation." (Order at 4, July 15, 2014, Docket No. 160.)

Monsanto objected to whether "an AEO designation provides sufficient protection for the Source Code." (Objection at 4.) In particular, Monsanto was concerned that SEI's attorneys would disclose the source code, advertently or inadvertently, or that it would fall into the hands of hackers. (*Id.* at 11.) Monsanto requested three additional protections: (1) that the source code may not be viewed on computers connected to the Internet, (2) that the source code must be encrypted when not being analyzed, and (3) that a third-party custodian secure the source code and monitor its access. (*Id.* at 4.) SEI argued that the protective order stipulated by the parties, particularly the AEO designation, was sufficient to protect the source code and that the use of a third-party

custodian would be burdensome and likely result in further discovery disputes. (SEI's Resp. to Monsanto's Objection to Magistrate Judge Order Requiring Production of Proprietary Source Code at 9-11, Aug. 13, 2014, Docket No. 165.)

In addition to objecting, Monsanto moved for reconsideration, requesting that the Magistrate Judge incorporate the same three protections requested in the objection. (Monsanto's Mem. in Supp. of Mot. for Reconsideration ("Mem. in Supp. of Mot. for Reconsideration") at 2, Aug. 20, 2014, Docket No. 167.) The Magistrate Judge granted Monsanto's request in part, requiring that computers used to view the source code be disconnected from the Internet and that the code be encrypted when not being analyzed. (Order on Mot. to Reconsider at 1, Sept. 11, 2014, Docket No. 185.) However, the order denied Monsanto's request for a third-party custodian. (*Id.* at 2.) The parties have not objected to the two new protections in the order on Monsanto's motion to reconsider. Therefore, only the request for a third-party custodian remains in dispute.

## ANALYSIS

### I.     STANDARD OF REVIEW

A magistrate judge has broad discretion over matters of discovery. *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 238 (D. Minn. 2013). A district court's review of a magistrate judge's order on a nondispositive matter is "extremely deferential." *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). The Court will reverse such an order only if it is clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a);

D. Minn. LR 72.2(a)(3). For an order to be clearly erroneous, the district court must have a "definite and firm conviction that a mistake has been made." *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)).

## II.   ADEQUACY OF THE PROTECTIVE ORDER

### A.   Standard for Compelling Trade Secrets

Monsanto argues that the Magistrate Judge's order compelling production of the source code was clearly erroneous because (1) the source code is uniquely valuable and (2) additional protections would not cause prejudice to SEI. (Objection at 4.) Monsanto only objects to the Magistrate Judge's discovery order on the "discrete point" whether "an AEO designation is sufficient to ensure the confidentiality of the Source Code." (*Id.* at 12-13.) Specifically, Monsanto argues that a third-party custodian is necessary to protect its product.

To determine the appropriate level of protection for a trade secret, a court must weigh the moving party's need for the information against the injury that might be caused to the non-moving party by disclosure. *In re Remington Arms Co., Inc.*, 952 F.2d 1029, 1032 (8th Cir. 1991). The potential for injury may be mitigated by an appropriate protective order. *See Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co.*, 171 F.R.D. 246, 250 (D. Minn. 1997) (holding that protective order entered into by the parties reduced the potential for injury to the producing party); *see also Fair Isaac Corp. v. Equifax, Inc.*, No. 06-4112, 2007 WL 2791168, at *5 (D. Minn. Sept. 25, 2007) (finding

that potential for injury was outweighed by need for discovery where appropriate protective order was in place).

The Magistrate Judge correctly concluded that SEI has demonstrated a need for the FieldScripts algorithm and source code. SEI's complaint alleges that Monsanto and SST "reverse engineered" FieldScripts from SEI's intellectual property. (Second Am. Compl. ¶ 70.) Thus, SEI seeks the FieldScripts source code to have an expert witness compare it to SEI's software code. (*See* Mem. of Law in Supp. of Mot. to Compel Monsanto's Production of Documents at 14, May 27, 2014, Docket No. 141.) A direct comparison of the code may be essential to proving or disproving SEI's claim that FieldScripts was produced by reverse engineering SEI's intellectual property. The primary question, therefore, is whether Monsanto has demonstrated that disclosure would cause irreparable injury. As explained below, the Court finds that Monsanto has not shown a risk of irreparable injury in light of the Magistrate Judge's protective order.

### B.     Irreparable Injury

There appears to be little disagreement between the parties over whether disclosure – absent any protections – would present a risk of irreparable injury to Monsanto. Both SEI and Monsanto produce a similar software product for farming clients, with some overlap in markets, and the source code SEI seeks is the foundation of Monsanto's product. Because of the potential for injury to Monsanto, the Magistrate Judge entered a powerful protective order to reduce the risks of disclosure. Fed. R. Civ. P. 26(c)(1)(G); *see Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir.

1973) (quoting Wright & Miller, *Federal Practice and Procedure: Civil* § 2035 at 264-65). The explicit point of disagreement between the parties is thus the adequacy of the protective order.

The protective order contains an AEO designation. AEO designations afford a high level of protection and are rarely used, because the opposing party itself cannot view information that could be crucial to its claims. *Taiyo Int'l, Inc. v. Phyto Tech Corp.*, 275 F.R.D. 497, 502 (D. Minn. 2011). Thus, "[w]here the parties have agreed to a protective order, particularly one with 'Attorneys' Eyes Only' designation, even a very sensitive trade secret will be sufficiently protected." *Id.* at 501.

Monsanto argues that even with an AEO designation, the protective order in this case is insufficient. Monsanto points to other courts that have required a third-party custodian for protective orders. One of these, *Premier International Associates v. Apple Computer, Inc.*, involved a voluntary stipulation by the parties and thus offers little guidance here. *See* No. 2-05CV-506, 2007 WL 7307061 (E.D. Tex. Sept. 11, 2007). In two other cases, a third party was ordered to tabulate the relevant information, but there was no AEO designation to protect materials from disclosure. *See Battle Creek Equip. Co. v. Roberts Mfg. Co.*, 90 F.R.D. 85, 86 (W.D. Mich. 1981); *Triangle Mfg. v. Paramount Bag Mfg.*, 35 F.R.D. 540, 543 (E.D.N.Y. 1964). Here, the presence of the AEO designation, which is "not commonplace in litigation," is a significant protection that strongly favors the adequacy of the current protective order. *See Taiyo Int'l*, 275 F.R.D. at 502.

*Fair Isaac Corp. v. Equifax, Inc.*, on the other hand, is similar to this dispute.  As in this case, the defendant in *Fair Isaac* sought to protect a software algorithm.  2007 WL 2791168, at *1.  The defendant requested the district court to either deny discovery of sensitive data, *id.* at *2, or require a third-party agent to hold the data, *id.* at *5.  Similar to the order on the motion to reconsider in this case, the *Fair Isaac* order restricted access to the parties' attorneys and experts, *id.* at *5, and also placed restrictions on the devices used to view the information, requiring that the source code be viewed only on password-protected computers that were disconnected from the Internet and locked when not in use, *id.* at *6.  The district court denied the defendant's request for a third-party agent and found the protective order adequate, agreeing with the Magistrate Judge's determination that such a provision would present "considerable logistical difficulties," impeding discovery.  *Id.*  The court noted the harm that could befall the Defendants if the order was violated, but emphasized that "Defendants have not identified any likelihood that Fair Isaac's outside counsel or independent experts would violate the Amended Protective Order." *Id.* at *5.

Further, Monsanto has not presented any evidence that SEI's attorneys or experts are likely to violate the protective order stipulated by the parties.  Although the Eighth Circuit has found an AEO designation to be insufficient when the non-producing party's attorney allegedly violated a protective order in the past, there is no indication that the attorneys in this case have violated protective orders in the past.  *See In re Remington Arms Co., Inc.*, 952 F.2d at 1033 & n.2 (remanding to the district court to determine whether AEO was sufficient in light of the attorney's alleged past behavior); *Sedlock v.*

*Bic Corp.*, 926 F.2d 757, 759 (8th Cir. 1991) (finding an AEO designation adequate where the attorney's past behavior was not at issue in that case). Monsanto only argues that the source code is highly valuable and that SEI and its affiliate companies are Monsanto's competitors, but they offer no explanation as to how SEI would obtain the underlying source code information. Indeed, Monsanto's concern is negated by the fact that SEI employees do not have access to the data under an AEO designation. SEI's attorneys are barred from disclosing the source code to SEI. And there is no evidence that SEI's attorneys have violated a protective order in the past or that they are likely to risk contempt charges by violating this protective order. Therefore, the Court finds that the AEO designation is adequate to protect Monsanto's intellectual property.

### C. Additional Safeguards

Not only is the original protective order adequate, but the Magistrate Judge has used his discretion to add two safeguards: (1) the source code may not be viewed on a computer that is connected to the Internet and (2) the source code must be encrypted when not being analyzed. These extra protections address Monsanto's concerns that hackers could access the source code or that SEI's attorneys could inadvertently disclose the data, further reducing the risk of irreparable harm to Monsanto. Given the protections already in place, the Court finds that the addition of a third-party escrow is unnecessary. Moreover, requiring a third-party agent would likely hamper discovery, potentially leading to further discovery disputes and delays. Therefore, the Court overrules

Monsanto's objection and finds that the Magistrate Judge's denial of a third-party custodian was not clearly erroneous.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Monsanto's objection as to the use of a third-party custodian to monitor access [Docket No. 163] and **AFIRMS** the Order of the Magistrate Judge, dated September 11, 2014 [Docket No. 185].

DATED: December 16, 2014      ____s/ John R. Tunheim____
at Minneapolis, Minnesota.      JOHN R. TUNHEIM
     United States District Judge